**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAGOBERTO GUZMAN,** | **Civil Action No.  26-1250 (KSH)** |
| **Petitioner,** | |
| **v.** | **MEMORANDUM OPINION** |
| **PAM BONDI, et al.,** | |
| **Respondents.** | |

This matter comes before the Court on Dagoberto Guzman's Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his mandatory detention without bond by immigration authorities.  Guzman entered the United States in June 2022; immigration officials paroled him into the country under 8 U.S.C. § 1182(d)(5)(A) for one year, and he applied for asylum.  Years later, after his parole expired, he was arrested by Immigration and Customs Enforcement ("ICE") in the interior of the United States.  At issue is whether Respondents can detain him without bond under 8 U.S.C. § 1225(b)(1) until his asylum proceedings conclude.  For the reasons explained below, the Court finds that Guzman is unlawfully detained under § 1225(b)(1), GRANTS the Petition on that basis, and orders Respondents to release Guzman from detention within 24 hours.  The Court does not reach his arguments that his medical conditions[1] entitle him to relief under *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986).

---

[1] Because the Court decides the Petition on a different basis and to protect Guzman's privacy, the Court does not discuss his medical conditions or history.

## I.      RELEVANT BACKGROUND & PROCEDURAL HISTORY

Guzman is a citizen of Colombia and entered the United States on May 24, 2022. (ECF No. 1, Petition at ¶¶ 2, 35; ECF No. 7-1 (Form I-860). On May 31, 2022, a border patrol agent apprehended Guzman, found him inadmissible to the United States, and issued a Notice and Order of Expedited Removal. (*Id.*) After Guzman expressed a fear of returning to Colombia, he was referred to the U.S. Citizenship and Immigration Services Asylum Office for a credible fear interview. (ECF No. 1 (Petition at ¶¶ 2, 5); ECF No. 7-1 (Notice to Appear).) It is undisputed that he was paroled from custody under 8 U.S.C. § 1182(d)(5) on or around June 8, 2022, and his parole period expired on June 7, 2023. (ECF No. 1, Petition at ¶ 2 (citing ECF No. 1-2 (Parole Document).)

On April 19, 2023, while on parole, Guzman filed an application for asylum, Withholding of Removal and protection under the Convention against Torture. (*Id.* at ¶ 3.) On June 4, 2025, Petitioner's Form I-589, Application for Asylum and for Withholding of Removal, was dismissed by U.S. Citizenship and Immigration Services ("USCIS") because he had not undergone a credible fear interview. (*Id.*; ECF No. 1-3.) On December 12, 2025, ICE arrested Guzman at his home, and he remains detained without bond at Delaney Hall, in Newark, New Jersey. (ECF No. 1, Petition at ¶¶ 4, 35).

Removal proceedings were initiated on or about December 27, 2025, and Guzman's Notice to Appear states that he "has not been admitted or paroled" despite the fact that he was indeed paroled following his apprehension. (*See* ECF No. 7-2 (Notice to Appear).) His belated credible fear interview also occurred on December 27, and the asylum officer determined that Guzman demonstrated a credible fear of persecution or torture and referred his case to the immigration court for asylum proceedings. (ECF No. 1-4 (Form I-870).) The immigration court pretermitted

Guzman's asylum application and ordered him removed to Ecuador, and in the alternative to Honduras; he has appealed that determination to the Board of Immigration Appeals ("BIA"). (ECF Nos. 7-4; ECF No. 9 at 5.)

This habeas petition, which challenges his detention on multiple grounds, followed.

## II.    STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    DISCUSSION

Respondents argue that Guzman is lawfully detained under 8 U.S.C. § 1225(b)(1)(B)(ii) because he was (i) apprehended at a port of entry or near the border, (ii) placed into expedited removal proceedings, and (iii) had a credible-fear screener interview for an asylum claim, where he was found to have a credible fear claim. (ECF No. 7, Answer at 2 (citing *Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016) (additional citations omitted).) Guzman argues that he is not subject to mandatory detention because "the plain language of § 1225(b)(1)(A)(iii)(II) unambiguously excludes individuals who have been paroled into the United States" and that "the statutory text of § 1182(d)(5)(A) does not support returning them to their pre-parole status[.]" (ECF No. 9, Reply Brief at 1-2.) For the reasons explained below, the Court agrees with Guzman.

In broad strokes, the detention framework of the INA distinguishes between those noncitizens seeking entry into the United States and those noncitizens who are already here. *See Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (explaining that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission into the country* under §§ 1225(b)(1) and (b)(2)" and "also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (emphasis added). Sections 1225 and 1226 both govern the detention of noncitizens prior to a final order of removal, *see id.* at 287-89, but "§§ 1225(b)(1) and (b)(2) mandate detention of aliens throughout the completion of applicable proceedings[.]"[2] *Id.* at 302. In contrast, 8 U.S.C. § 1226(a) governs the detention of noncitizens (without qualifying criminal convictions or charges) already present within the United States who may be detained pursuant to a warrant based on flight risk or dangerousness and are entitled to receive a bond hearing before an immigration judge. *See id.* at 288.

A noncitizen like Guzman who enters the United States and is detained shortly after making an unlawful crossing of the border may be subject to expedited removal under § 1225(b)(1). *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). Section 1225(b)(1) is "a separate track for expedited removal proceedings," which "'substantially shorten and speed up the removal process.'" *Rodriguez-Acurio v. Almodovar*, 811 F.Supp.3d 274, 291 (E.D.N.Y. 2025) (citing *Make the Rd. New York v. Wolf*, 962 F.3d 612, 618–19 (D.C. Cir. 2020)). Applicants covered by § 1225(b)(1) may be removed "without further hearing or review" pursuant to an

---

[2] In 2019, following *Jennings*, the BIA overruled *In Re X-k-*, 23 I. & N. Dec. 731, 731 (2005), and held that noncitizens who are "transferred from expedited removal proceedings to full removal proceedings after establishing a credible fear of persecution or torture" are "ineligible for release on bond" and must "be detained until his removal proceedings conclude, unless he is granted parole." *Matter of M-S-*, 27 I. & N. Dec. 509, 509 (2019).

expedited removal process unless he "indicates either an intention to apply for asylum . . . or a fear of persecution[,]" in which case he is referred for an asylum interview.    8 U.S.C. § 1225(b)(1)(A)(i)-(ii).    Detention is mandatory, *see* 8 U.S.C. §§ 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV), but the government may, in its discretion, temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings*, 583 U.S. at 287-88.

There appears to be no dispute that Guzman was originally subject to § 1225(b)(1) when he was apprehended in 2022.  At issue is whether he is still subject to mandatory detention under §§ 1225(b)(1)(B)(ii), (b)(1)(B)(iii)(IV) following his parole under § 1182(d)(5)(A).  Respondents argue that his "detention is . . . mandatory pending removal proceedings under § 1225(b)(1)(B)(ii), which states that "with a positive credible fear determination, the alien 'shall be detained' throughout the removal proceedings."

Statutory construction begins with the text of the statute, *see Sebelius v. Cloer*, 569 U.S. 369, 376, (2013), and Respondents' argument ignores the fact that noncitizens must meet additional requirements to fall within § 1225(b)(1).  First, the noncitizen must be "inadmissible" to the United States either because he lacks proper entry documents or because he engaged in fraud or willfully misrepresented a material fact on his application for admission.    8 U.S.C. § 1225(b)(1)(A)(i).  Second, he must also either be "arriving in the United States," under 8 U.S.C. § 1225(b)(1)(A)(i), or be a noncitizen "who has not been admitted or paroled into the United States, and has not affirmatively shown, to the satisfaction of an immigration officer, that [he] has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility[.]" *Id.,* § 1225(b)(1)(A)(iii)(II).  The latter provision is known as the "Designation Provision," and when Guzman was apprehended in 2022, it applied to noncitizens who had not been admitted or paroled and were encountered within 14 days of entry

and 100 miles of the border.  *See Castro*, 835 F.3d at 425 (explaining that Section 1225(b)(1) applies to "arriving aliens" and those aliens "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border").

The record shows that CBP encountered Petitioner near the border on May 31, 2022, approximately a week after his entry, and that he was initially processed for expedited removal but was referred for a credible fear hearing after expressing a fear of returning to Columbia.  On June 8, 2022, he was released on parole under § 1182(d)(5)(A) for a period of a year, until June 7, 2023. When ICE arrested Guzman in December 2025, the Designation Provision of Section 1225(b)(1) no longer applied to him because the plain language of that subsection applies to a noncitizen "who has not been admitted or paroled into the United States[.]"  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Like other courts that have addressed this language, this Court finds that this phrase "does not refer to a legal status but rather to the event of entry into the United States via admission or parole, which either did or did not occur."[3]  *Rodriguez-Acurio*, 811 F. Supp.3d at 300; *see also Rivas Rodriguez*, 2025 WL 3485628, at *2 (finding "because § 1225(b)(1)(A)(iii)(II) applies only to individuals 'who have not been . . . paroled,' the plain language of the statute clearly and unambiguously shows that § 1225(b)(1)(A)(iii) cannot serve as the basis for" detention of a noncitizen who was previously paroled under § 1182(d)(5)(A)); *Vasquez-Rosario v. Noem*, Civ. A. No. 25-7427, 2026 WL 196505, at *7 (E.D. Pa. Jan. 26, 2026) (same); *Suazo Rivera v. Blanche*, No. 2:26-cv-03892 (BRM), 2026 WL 1153665, at *3 (D.N.J. Apr. 29, 2026) (same); *Murillo-Castillo v. Florentino*, No. 25-16728 (MCA), 2026 WL 1383062, at *5 (D.N.J. May 18, 2026) (same).  Thus, although Guzman was subject to the Designation Provision when he was initially apprehended in 2022, he

---

[3] Nor is Guzman an "arriving alien" who is "in the process of reaching the United States." *Rodriguez-Acurio*, 811 F. Supp.3d at 306.

is not subject to it now because it plainly exempts those noncitizens who have been have been admitted or paroled into the United States.

Respondents separately contend that the parole statute, 8 U.S.C. § 1182(d)(5)(A), returns Petitioner to mandatory detention or the custody status he held at the time he entered the United States.  In reaching this conclusion, Respondents rely on *Faqirzada v. Rokosky*, No. 25-16639 (MAS), 2026 WL 63614, at *2 (D.N.J. Jan. 8, 2026), [4] and several out-of-circuit decisions, but they do not analyze the plain language of the parole statute, which states in relevant part that

> such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission.

8 U.S.C. § 1182(d)(5)(A).  Here, Respondents "fail to address whether 'return or be returned to the custody from which he was paroled' plainly means that [Guzman] returns to the same custody status, i.e., mandatory detention, that he held when he entered the United States in 2022." *Murillo-Castillo*, 2026 WL 1383062, at *4; *Guevara v. Tsoukaris*, 2026 WL 969261, at *3 (D.N.J. Apr. 9, 2026) (JXN). ("Respondents fail to discuss the plain text of § 1225(b)(1)" or "analyze the statutory language of the parole statute, § 1182(d)(5)(A), and how it provides for Petitioner's return to mandatory detention under § 1225(b)(1).").

---

[4] Although there is some support for Respondents' interpretation in administrative decisions and regulations, the Court "must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (overruling *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)).  Their interpretation also finds support in the so-called "entry fiction," but the Court agrees with the District Court in *Rodriguez-Acurio*, 811 F. Supp.3d at 306, which found that "*Thuraissigiam* stands for the limited principle that those 'at the threshold of initial entry' stand on a different footing for due process purposes than noncitizens 'who have established connections in this country.'" *Id.* at 313-14 (citing 591 U.S. at 107).

The Court is persuaded that the relevant language does not mandate a return to physical detention or to the detention authority that applied prior to parole. Because "custody" is not defined in the INA, the Court "turns to the phrase's plain meaning at the time of enactment." *Olimov v. Jamison*, 2026 WL 596155, at *4; *see also Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011)); *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (the Court "normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them"). As observed by the district court in *Olimov*,

> [w]hen Congress enacted the Immigration and Nationality Act of 1952, it included identical language about a return to custody following parole. *See* Pub.L. 82-414, 66 Stat. 163, 188, § 212(d)(5) (June 27, 1952). [FN omitted.] Then, as now, the statute did not define "*custody*." However, at the time Congress enacted the INA, "custody" could refer to charge, control, or possession, as well as detention. *See* Custody, Black's Law Dictionary, 460 (4th ed. 1951). Indeed, the term was "very elastic and [could] mean actual imprisonment or physical detention or mere power, legal or physical, of imprisoning or of taking manual possession." *Id.*

*Id.* at *5. In *Olimov*, the district court also analyzed other uses of the words "custody" and "detain" in § 1182 found that "Congress's use of the various forms of the word 'detain' demonstrates that, in 1952, when Congress wanted to specify physical custody, it knew the words to use." *Id.* (citing *Bittner v. United States*, 598 U.S. 85, 94 (2023); *Russello v. U.S.*, 464 U.S. 16, 23 (1983)). The district court concluded that because "'custody' is an elastic term that could have various meanings," it is "more prudent to assume that Congress meant custody to refer to control over the alien, as opposed to physical detention."[5] *Id.* at *6 (citing *United States ex rel. Petratos v.*

---

[5] Section 1182(d)(5)(A) also mandates that "thereafter [the noncitizen's] case shall continue to be dealt with in the same manner as that of any other applicant for admission." 8 U.S.C. § 1182(d)(5)(A). To the extent this language bears on his detention status at all, it "mandates that [Guzman] be treated just as the INA would treat any noncitizen previously granted parole and living in the United States." *Qasemi*, 2025 WL 3654098, at *12 (holding that "any determination as to [the petitioner's] detention must be conducted under the discretionary framework of Section 1226(a)").

*Genentech Inc.*, 855 F.3d 481, 488 (3d Cir. 2017) ("The use of different words or terms within a statute demonstrates that Congress intended to convey a different meaning for those words."); *see also Qasemi v. Francis*, No. 25-CV-10029 (LJL), 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (finding that return to the custody from which he was paroled does not mean a return to physical detention); *Murillo-Castillo*, 2026 WL 1383062, at *5 (same). Here, the Court finds that "return . . . to the custody from which he was paroled" means legal control or supervision and not necessarily physical detention.

Notably, Guzman's parole expired nearly three years ago in June 2023. There is no evidence that ICE attempted to detain him at that time or was unable to locate him. Indeed, he applied for asylum while still on parole and was living freely in the interior of the United States prior to his arrest by ICE. District courts have found that noncitizens who are not taken into custody when their period of parole expires may only be detained under § 1226(a). *See Cabrera Martinez v. Marich*, 816 F. Supp.3d 356, 373 (W.D.N.Y. 2025) ("[T]his Court joins those courts that have found that an individual who has been living in the United States outside parole and is later apprehended is detained under section 1226).

The Court also rejects Respondents' interpretation of §§ 1225(b)(1) and 1182(d)(5)(A) because it would require the mandatory detention of noncitizens who have lived in the United States for years and formed significant ties here, which "would raise significant constitutional issues." *Qasemi*, 2025 WL 3654098, at *12; *Olimov*, 2026 WL 596155, at *6. And "to the extent this Court were to find that 1182(d)(5)(A) and/or § 1225 are ambiguous, it would resort to constitutional avoidance, a doctrine which permits a court to choose 'between competing plausible interpretations of a statutory text.'" *Murillo-Castillo*, 2026 WL 1383062, at *6 (quoting *Jennings*,

583 U.S. at 298); *Gonzalez v. United States*, 553 U.S. 242, 251 (2008) (cleaned up) ("When a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [the Court's] duty is to adopt the latter.").

For all these reasons, the Court rejects Respondents' arguments that Petitioner is subject to mandatory detention under § 1225(b)(1). At the time of his arrest by ICE, Guzman may have been subject to detention under § 1226(a), but "the Government did not attempt to follow the requirements of that statute in taking him into custody, nor have they used that statute as a basis for his detention." *Fajardo-Nugra v. Soto*, No. 26-975, 2026 WL 579192, at *1-2 (D.N.J. Mar. 2, 2026). The Court will not convert Petitioner's detention to "potentially lawful alternate form under a different statute with different procedural requirements and rules." *Id.* at *2 (granting Petitioner's habeas petition and ordering Petitioner's release based on the Government's flawed application of § 1225(b)(2)). The Court orders Respondents to release Petitioner within 24 hours. The Court declines to reach the remaining arguments regarding Petitioner's medical conditions and any remaining claims in light of the relief provided. An appropriate Order follows.

s/Katharine S. Hayden
**Katharine S. Hayden, U.S.D.J.**

10